UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNITED STATES OF AMERICA,

        against-

BRANDON SHAW,

        Defendant.
----------------------------------------------------------------x

06 CR 41-01 (CM)

### DECISION AND ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

On January 13, 2010, Brandon Shaw[1] was sentenced to life imprisonment for his involvement in the murder of Marcus Bogle. Shaw is currently incarcerated at United States Penitentiary McCreary.

On November 7, 2022, Shaw moved for compassionate release under Section 3852(c)(1)(A) on the ground that due to mismanaged medical care, he was losing the ability to walk and risked having his leg amputated. (Dkt. No. 207). In the alternative, Shaw requested to be transferred to FMC Devens to receive medical care. On April 26, 2023, the Court denied Shaw's motion finding that he failed to establish "extraordinary and compelling" circumstances warranting compassionate release. The Court found that Shaw was receiving adequate medical care in the Bureau of Prisons that had "dramatically improved his pain," eliminated the risk of amputation, and improved his mobility. (Dkt. No. 216 at 7-8). Moreover, the Court found that even if Shaw had made a threshold

---

[1] While the defendant is named Brandon Shaw on the docket and is referred to by that name in the underlying proceedings, he uses the name Nigel Brown, in his compassionate release motion. His counsel in connection with his previous compassionate release motion represented that that Brandon Shaw is indeed his true name, but that the Bureau of Prisons refers to him as Nigel Brown. The Court will refer to defendant in its decision by the name he was indicted under, and the name he says is his true name: Brandon Shaw.

1

showing of extraordinary and compelling circumstances warranting the Court to consider his early release, the nature and seriousness of the offense conduct—namely, that Shaw demonstrated himself to be a "cold-blooded killer"—the sentencing factors at 18 U.S.C. § 3553(a) strongly counseled against his release. (*Id.* at 9). The Court did, however, recommend that the BOP temporarily transfer Shaw to a medical facility for a full evaluation, treat him consistent with that evaluation, and designate him to an appropriate facility in light of any treatment needs. (*Id.* at 10).

Before the Court is another motion by Shaw asking the Court to grant him compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF Documents 225 and 228). Shaw's present motion essentially renews the arguments he made in his previous motion, namely that his "numerous medical issues place him in danger within the prison environment," and "he is not receiving adequate medical assistance despite what the [BOP] may contend." *Id.* He also claims that his release is warranted because his sentence is unusually long and that he is rehabilitated and no longer a threat to society.

The Government asks the Court to deny Shaw's Motion on the merits because he has failed to establish an extraordinary and compelling reason warranting his release, and because any reduction in Shaw's sentence would be inconsistent with the factors set forth in § 3553(a).

Background

Between April 2001 and March 2006, Brandon Shaw, Norman Harrison, and Marlon Campbell, were involved in a marijuana trafficking scheme. Presentence Report ("PSR") ¶ 2. Harrison was a marijuana distributor who brought truckloads of marijuana from California to the Northeast. PSR ¶ 11. Harrison supplied multiple drug sellers, including Brandon Shaw and Marcus Bogle, both of whom operated in the Bronx, New York. *Id.* Campbell was one of Shaw's associates in the marijuana business. *Id.*

In December 2001, armed robbers entered Harrison's apartment, bound him by his hands and feet, beat him, threatened an elderly woman and child in the apartment, and then made off with over half a million dollars of Harrison's drug money. *Id.* Harrison believed Bogle was involved in the robbery and commissioned Shaw to kill Bogle in retaliation and in order to protect Harrison's drug business from further robberies. *Id.* ¶ 13. Shaw enlisted Campbell to assist in Bogle's murder. In exchange for the killing, Shaw and Campbell anticipated that Harrison would provide a steady supply of marijuana that would allow them to expand their drug business. *Id.* ¶¶ 13–14.

On November 14, 2002, Shaw, Campbell, and others went to the home of Bogle's girlfriend in the Bronx and lured Bogle from the house. *Id.* ¶ 16. After Bogle got into his car alone and was stopped at a stop sign, Shaw, Campbell, and others pulled up in another car next to Bogle and shot him to death. *Id.* Indeed, Shaw reached across the front seat, told Campbell to "watch it" and said that he wanted to "give [Bogle] the tablet," a Jamaican phrase which means to administer the fatal bullet. Trial Transcript at 301-02. While firing at Bogle, one of Shaw's bullets grazed Campbell's hand. *Id.* On the way back to Brooklyn, Shaw called Harrison from his cell phone and told Harrison that he had taken care of Bogle. *Id.* at 304.

On November 14, 2007, Shaw was indicted on four counts: (1) conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A); (2) engaging in a continuing criminal enterprise that caused an intentional killing of an individual in violation of 21 U.S.C. § 848(e)(1)(A); (3) discharge of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (4) causing death by use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(j). Shaw was convicted on all four counts by a jury on December 5, 2008.

On January 13, 2010, the Court sentenced Shaw to life imprisonment on each of the four counts, all to be served concurrently.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). Those applicable policy statements—there are six—are set forth in the United States Sentencing Guidelines § 1B1.13. Two of those statements are particularly relevant here:

> (1) *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, id. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts

4

>to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, id. § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner."

§ U.S.S.G. § 1B1.13(b)(1), and;

>(6) *Unusually long sentence*. Where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

U.S.S.G. § 1B1.13(b)(6).

Finally, neither the recent amendment to the Guidelines nor *Brooker* changed the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must also consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they remain applicable, and determine whether they counsel for or against release. A court always retains discretion to deny a motion for compassionate release if, in its view, the § 3553(a) factors override what would otherwise present extraordinary and compelling circumstances for release.

### Shaw Exhausted his Administrative Remedies in the Bureau of Prisons

On December 18, 2024, Shaw filed a request for a reduction of sentence under the compassionate release statute with the warden at USP McCreary. (ECF Doc. 228 Exhibit B).

5

Since there is no indication that anyone from the BOP has responded to Shaw's request, Shaw is deemed to have properly exhausted his administrative remedies, and his present motion for compassionate release is properly before the Court.

### Shaw's Motion Before the District Court

Shaw renews his prior arguments that his "numerous medical issues place him in danger within the prison environment" and he "is not receiving adequate medical assistance despite what the [BOP] may contend." Motion at 1. Shaw contends that, for example, the BOP did not move him to a medical facility as the Court recommended in 2023. (*Id.* at 8-9).

Shaw further argues that he "has health conditions that he has not been given the proper medical attention for and those conditions also make living in the prison environment exceptionally difficult." (*Id.* at 6). Shaw, now 48 years old, says that he suffers from hypertension, blood clotting after surgery, and hernias that resulted from "botched surgeries" he received while imprisoned. (*Id.* at 7). Shaw states that these "conditions require treatment from outside medical providers because the BOP cannot provide the procedures and monitoring required to provide consistent and thorough management of his conditions." (*Id.* at 8). He claims that the BOP cannot provide adequate medical care due to BOP "medical staffing shortages, treatment delays, and medical personnel recruiting issues." (*Id.* at 10).

Shaw states that his conditions make living in prison exceptionally difficult. He cites several cases in which courts have granted compassionate release for imprisoned people who were at higher risk for COVID-19 infection during the pandemic. (*Id.* at 8). Shaw also cites cases in which courts chose not to grant compassionate release but acknowledged the sub-optimal conditions of imprisonment during the COVID-19 pandemic. (*Id.* at 12-13). Shaw argues that his

"susceptibility for severe illness and death from COVID-19" are extraordinary and compelling medical reasons for compassionate release. (*Id.* at 8).

Finally, Shaw argues that his sentence is longer than necessary to "achieve the objectives that a sentence be sufficient but not greater than necessary, to achieve the goals of sentencing," and suggests that he meets the criteria for a sentencing reduction, pursuant to United States Sentencing Guidelines § 1B1.13(b)(6) (the unusually long sentence provision).

Shaw asks the court to reduce his sentence to time served. (*Id.* at 19). Alternatively, he requests that he be supervised by the Probation Department, with or without home confinement. (*Id.* at 21).

### *Long Sentence*

Addressing first Shaw's argument that his sentence is unusually long, and should be reduced pursuant to U.S.S.G. § 1B1.13(b)(6): By its plain terms, Section 1B1.13(b)(6) is only applicable if the defendant (i) "received an unusually long sentence"; (ii) "has served at least 10 years of the term of imprisonment"; and (iii) *has identified "a change in the law . . . [that] would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."* (Emphasis added). Even then, the identified change in law only constitutes "extraordinary and compelling reasons" "after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). Here, Shaw has not made, and cannot make, the requisite showing: While his sentence is indeed "long" (but deserved so), and he has served more than ten years in prison, he has not identified any change in law that produce a gross sentencing disparity.

Accordingly, U.S.S.G. § 1B1.13(b)(6) does not provide Shaw with a basis for relief.

*Medical Claims*

Since the Court last examined Shaw's medical record in connection with its April 2023 order, the BOP arranged for Shaw to meet with orthopedic specialists in 2023, 2024, and as recently as last month. (Shaw's Inmate Medical Records, 2024 Notes at 32 (7/26/23); 2025 Notes at 22 (2/28/24), *id.* at 1 (3/4/25)). The records also indicate that Shaw received treatment within the BOP consistent with the recommendations of the orthopedist's recommendations. (2025 Notes at 4, 17, 20, 24, 29; 2024, Notes at 1, 21, 43, 46, 48). Accordingly, like in April 2023, Shaw's knee condition does not constitute an extraordinary and compelling circumstance warranting compassionate release.

Nor do any of the other medical conditions Shaw cites warrant early release. Shaw's BOP medical records establish that he has received routine appointments and lab testing through the BOP's Health Services. Based on Shaw's medical records from 2023 and 2024, he has met with several medical professionals who provided a holistic evaluation of his conditions and recommended a series of lifestyle changes, pain management improvements, and medication alternatives to Shaw. The BOP's medical professionals have repeatedly instructed Shaw to take his medication as prescribed and to make low-sodium and heart-healthy improvements to his diet. Medical Records 2025. Shaw's medical records demonstrate that the care provided by BOP's Health Services is sufficient for his current needs.

While it is true that Shaw or any other inmate confined in a BOP facility would—in most instances—be better off receiving medical treatment in the community, Shaw's medical records refute his claim that the BOP is not providing him with adequate care.

*COVID-19*

Regarding COVID-19, the ubiquitous availability of preventative vaccines and effective treatment options for those who become infected by the virus, has all but eliminated COVID-19 as a basis for granting compassionate release; even for those persons whom the Centers for Disease Control has in the past said were at risk of suffering a severe outcome if they were to become infected. That said, the pandemic was extremely hard on prisoners. The necessary steps that the BOP undertook to stop the spread of the deadly virus—lockdowns, suspension of programs, and curtailed visitation—led to increased prisoner isolation and fewer program opportunities for inmates. This created harsher than usual conditions of confinement, which is a factor the court can and does consider in deciding whether extraordinary and compelling circumstances warrant granting compassionate release for a COVID-19 era inmate. In a case where there are factors favoring release, COVID-19 era incarceration could tip the scale in favor of release— but not in this case, where there is no reason that warrants granting early release.

*Rehabilitation*

Likewise, Shaw's claimed rehabilitation—which, for the purposes of deciding the present motion, the Court accepts as true—cannot be the basis for early release, absent some other compelling reason warranting release. *See Brooker*, 976 F.3d at 237-38 (rehabilitation alone cannot satisfy the "extraordinary and compelling circumstances" standard).

*The § 3553(a) Factors*

Even if Shaw had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a

sentence reduction. Principal among those considerations in this case are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

The nature and circumstances of the offense could hardly be more serious. As this Court said at sentencing, Shaw was "a cold-blooded killer.". . . No more serious crime can be committed [and that the] nature and circumstances of the defendant, especially . . . the trickery, that was used to get [the victim] into a position where he could be killed, warrant only the most draconian of punishment . . . . Everybody who was involved in this crime deserves the max." Sentencing Transcript at 19-21.

After weighing all of the § 3553(a) factors in connection with Shaw's present motion, the Court is convinced that the sentence of life imprisonment continues to be appropriate given the grave nature of Shaw's crimes— no reduction is warranted.

The motion for compassionate release is denied.

The Clerk of the Court is to terminate the open motions found at ECF 225 and 228.[2]

This constitutes the decision and order of the Court

Dated: April 22, 2025

Colleen McMahon
United States District Court Judge

---

[2] Shaw filed two identical versions of his present motion, one at ECF 225, and the other at ECF 228. However, the motion Shaw filed at ECF 228, includes a series of exhibits in support of his motion; all of which the Court reviewed in deciding the motion.